UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

MULTILAYER WORLDWIDE
ENTERPRISES, LLC,

      Plaintiff,

v.

DANIEL KUSH,

      Defendant.

_____X

**DEFENDANT'S ANSWER &
COUNTERCLAIM**

CASE NO. 08CIV.1939(KMK)

**JURY TRIAL REQUESTED**

COMES NOW, DANIEL KUSH, Defendant in the above lawsuit, and files Defendant's Answer and Counterclaim against Plaintiff, showing this Honorable Court as follows:

FIRST DEFENSE

Plaintiff's lawsuit should be dismissed since Plaintiff fails to state a claim upon which relief may be granted.  Plaintiff hereby moves to dismiss the Complaint in its entirety.

SECOND DEFENSE

Plaintiff's lawsuit should be dismissed on grounds of release and settlement. Plaintiff hereby moves to dismiss the Complaint in its entirety.

THIRD DEFENSE

Plaintiff's lawsuit should be dismissed on grounds of waiver. Plaintiff hereby moves to dismiss the Complaint in its entirety.

## FOURTH DEFENSE

Plaintiff's lawsuit should be dismissed on grounds of acquiescence and estoppel. Plaintiff hereby moves to dismiss the Complaint in its entirety.

## FIFTH DEFENSE

Plaintiff's lawsuit should be dismissed in accordance with Fed. R. Civ. P. 9 since Plaintiff failed to allege with particularity its averments of fraud. Plaintiff hereby moves to dismiss the Complaint in its entirety.

## SIXTH DEFENSE

Plaintiff's lawsuit should be dismissed in accordance with Fed. R. Civ. P. 9 since Plaintiff failed to allege specifically its claims of special damages. Plaintiff hereby moves to dismiss the Complaint in its entirety.

## SEVENTH DEFENSE

Defendant responds to the individually numbered paragraphs in Plaintiff's Complaint as follows:

## **JURISDICTION AND VENUE**

1.

Defendant denies the allegations of paragraph one.

2.

Defendant admits the allegations of paragraph two.

## THE PARTIES

### 3.

Defendant is without sufficient knowledge to admit or deny the allegations of paragraph three and therefore denies the allegations of paragraph three.

### 4.

Defendant is without sufficient knowledge to admit or deny the allegations of paragraph four and therefore denies the allegations of paragraph four.

### 5.

Defendant is without sufficient knowledge to admit or deny the allegations of paragraph five and therefore denies the allegations of paragraph five.

### 6.

Defendant is without sufficient knowledge to admit or deny the allegations of paragraph six and therefore denies the allegations of paragraph six.

### 7.

Defendant admits the allegations of paragraph seven.

### 8.

Regarding paragraph 8, Defendant admits the following: "MWE is engaged in the distribution and sale of products in the printed circuit board ("PCB") industry." Defendant is without sufficient knowledge to admit or deny the remaining allegations of paragraph eight and therefore denies the remaining allegations of paragraph eight.

### 9.

Defendant admits the allegations of paragraph nine.

10.

Defendant denies the allegations of paragraph 10.

11.

Defendant denies the allegations of paragraph 11.

12.

Defendant denies the allegations of paragraph 12.  The language of the

Employment Agreement speaks for itself.

13.

Defendant denies the allegations of paragraph 13.  The language of the

Employment Agreement speaks for itself.

14.

Defendant admits the allegations of paragraph 14.

15.

Defendant admits he received fringe benefits but is without sufficient information

to form an opinion regarding the value of the benefits and therefore denies the allegations

of paragraph 15.

16.

Defendant denies the allegations of paragraph 16.

17.

Defendant denies the allegations of paragraph 17.

18.

Defendant denies the allegations of paragraph 18. The language of the Agreement speaks for itself.

19.

Defendant denies the allegations of paragraph 19. The language of the Agreement speaks for itself.

20.

Defendant denies the allegations of paragraph 20. The language of the Agreement speaks for itself.

21.

Defendant denies the allegations of paragraph 21. The language of the Agreement speaks for itself.

22.

Defendant denies the allegations of paragraph 22. The language of the Agreement speaks for itself.

23.

Defendant denies the allegations of paragraph 23. The language of the Agreement speaks for itself.

24.

Defendant denies the allegations of paragraph 24. The language of the Agreement speaks for itself.

25.

Defendant denies the allegations of paragraph 25.

26.

Defendant denies the allegations of paragraph 26.  Defendant admits that he was

terminated by the Company on or about January 28, 2008.

27.

Defendant denies the allegations of paragraph 27.

28.

Defendant denies the allegations of paragraph 28.

29.

Defendant denies the allegations of paragraph 29.

## **COUNT ONE**

30.

Defendant realleges and reincorporates his answers from the above paragraphs 1-

29 as if rewritten in their entirety herein.

31.

Defendant denies the allegations of paragraph 31.

32.

Defendant denies the allegations of paragraph 32.  The language of the Agreement

speaks for itself.

33.

Defendant denies the allegations of paragraph 33. The language of the Agreement speaks for itself.

34.

Defendant denies the allegations of paragraph 34.

35.

Defendant denies the allegations of paragraph 35.

36.

Defendant denies the allegations of paragraph 36.

## COUNT TWO

37.

Defendant realleges and reincorporates his answers from the above paragraphs 1-36 as if rewritten in their entirety herein.

38.

Defendant denies the allegations of paragraph 38. The language of the Agreement speaks for itself.

39.

Defendant denies the allegations of paragraph 39. The language of the Agreement speaks for itself.

40.

Defendant denies the allegations of paragraph 40.

41.

Defendant denies the allegations of paragraph 41.

## **COUNT THREE**

42.

Defendant realleges and reincorporates his answers from the above paragraphs 1-41 as if rewritten in their entirety herein.

43.

Defendant denies the allegations of paragraph 43.  The language of the Agreement speaks for itself.

44.

Defendant denies the allegations of paragraph 44.

45.

Defendant denies the allegations of paragraph 45.

46.

Defendant denies the allegations of paragraph 46.

47.

Defendant denies the allegations of paragraph 47.

48.

Defendant denies the allegations of paragraph 48.

## COUNT FOUR

49.

Defendant realleges and reincorporates his answers from the above paragraphs 1-48 as if rewritten in their entirety herein.

50.

Defendant denies the allegations of paragraph 50.

51.

Defendant denies the allegations of paragraph 51.

52.

Defendant denies the allegations of paragraph 52.

53.

Defendant denies the allegations of paragraph 53.

54.

Defendant denies the allegations of paragraph 54.

55.

Defendant denies the allegations of paragraph 55.

56.

Defendant denies the allegations of paragraph 56.

57.

Defendant denies the allegations of paragraph 58.

59.

Defendant denies the allegations of paragraph 59.

60.

Defendant denies the allegations of paragraph 60.

61.

Defendant denies the allegations of paragraph 61.

62.

Defendant denies the allegations of paragraph 62.

63.

Defendant denies the allegations of paragraph 63.

64.

Defendant denies the allegations of paragraph 64.

65.

Defendant denies the allegations of paragraph 65.

66.

Defendant denies the allegations of paragraph 66.

67.

Defendant denies the allegations of paragraph 67.

68.

Defendant denies the allegations of paragraph 68.

## COUNT FIVE

69.

Defendant realleges and reincorporates his answers from the above paragraphs 1-68 as if rewritten in their entirety herein.

70.

Defendant denies the allegations of paragraph 70.

71.

Defendant denies the allegations of paragraph 71.

72.

Defendant denies the allegations of paragraph 72.

73.

Defendant denies the allegations of paragraph 73.

74.

Defendant denies the allegations of paragraph 74.

75.

Defendant denies the allegations of paragraph 75.

76.

Defendant denies the allegations of paragraph 76.

77.

Defendant denies the allegations of paragraph 77.

78.

Defendant denies the allegations of paragraph 78.

79.

Defendant denies the allegations of paragraph 79.

80.

Defendant denies the allegations of paragraph 80.

81.

Defendant denies the allegations of paragraph 81.

## **COUNT SIX**

82.

Defendant realleges and reincorporates his answers from the above paragraphs 1-81 as if rewritten in their entirety herein.

83.

Defendant denies the allegations of paragraph 83.

84.

Defendant denies the allegations of paragraph 84.

85.

Defendant denies the allegations of paragraph 85.

86.

Defendant denies the allegations of paragraph 86.

87.

Defendant denies the allegations of paragraph 87.

88.

Defendant denies the allegations of paragraph 88.

89.

Defendant denies the allegations of paragraph 89.

90.

Defendant denies the allegations of paragraph 90.

## COUNT SEVEN

### 91.

Defendant realleges and reincorporates his answers from the above paragraphs 1-90 as if rewritten in their entirety herein.

### 92.

Defendant denies the allegations of paragraph 92.

### 93.

Defendant denies the allegations of paragraph 93.

### 94.

Defendant denies the allegations of paragraph 94.

### 95.

Defendant denies the allegations of paragraph 95.

### 96.

Defendant denies the allegations of paragraph 96.

## COUNT EIGHT

### 97.

Defendant realleges and reincorporates his answers from the above paragraphs 1-96 as if rewritten in their entirety herein.

### 98.

Defendant denies the allegations of paragraph 98.

### 99.

Defendant denies the allegations of paragraph 99.

100.

Defendant denies the allegations of paragraph 100.

101.

Defendant denies the allegations of paragraph 101.

102.

Defendant denies the allegations of paragraph 102.

103.

Defendant denies the allegations of paragraph 103.

104.

Defendant denies the allegations of paragraph 104.

105.

Defendant denies the allegations of paragraph 105.

106.

Defendant denies the allegations of paragraph 106.

## **COUNT NINE**

107.

Defendant realleges and reincorporates his answers from the above paragraphs 1-106 as if rewritten in their entirety herein.

108.

Defendant denies the allegations of paragraph 108.

109.

Defendant denies the allegations of paragraph 109.

110.

Defendant denies the allegations of paragraph 110.

111.

Defendant denies the allegations of paragraph 111.

112.

Defendant denies the allegations of paragraph 112.

113.

In response to Plaintiff's prayer for relief, Defendant denies all allegations contained therein and denies that Plaintiff is entitled to any of the relief requested therein or any other relief.  By way of further response and as Defendants' prayer for relief as to Plaintiff's Complaint, Defendant prays for the following relief:

(a)    That Plaintiff's Complaint be dismissed;

(b)    That judgment be entered on behalf of Defendant for the entirety of Plaintiff's Complaint;

(c)    That Defendant be awarded his attorney's fees, expenses, and all other costs incurred with this action;

(d)    That this Court award Defendant all other relief as this Court deems just; and

(e)    For a jury trial on issues so triable.

<u>EIGHTH DEFENSE</u>

All allegations that are not specifically admitted herein are denied.

15

## COUNTERCLAIM BY

## DEFENDANT DANIEL KUSH

COMES NOW, DEFENDANT DANIEL KUSH, the Counterclaim Plaintiff in this action, and files his Counterclaim against the Counterclaim Defendant MULTILAYER WORLDWIDE ENTERPRISES, LLC (hereinafter Defendant "MWE"), showing this Court the following:

1.

By filing its Complaint with this Court, Defendant MWE is subject to the jurisdiction and venue of this Court.  Jurisdiction and venue are proper in this Court.

2.

Plaintiff Daniel Kush was previously employed with Defendant MWE as its Director of Sales and Marketing until he was terminated on January 28, 2008.

3.

Prior to January 28, 2008, Defendant called a meeting with Plaintiff to discuss certain reimbursement expenses that Plaintiff had submitted to the Defendant in 2007 and with respect to which the Defendant had paid Plaintiff.

4.

The meeting occurred on Monday, January 28, 2008 at the Defendant's business offices located in Winchester, Massachusetts.

5.

Defendant MWE had performed a review of Plaintiff's expense reports and had determined that a total of three expenses ((i.)$728.80, (ii.)$848.30, and (iii.)$1,379.20)

involving airfare had been submitted twice; one expense ($2,482.96) involving airfare had been submitted three times; and one expense ($791.09) for lodging had been submitted twice.

6.

The total amount of the redundant expenses previously paid by Defendant came to approximately $8,713.31.

7.

Plaintiff met with Defendant's President, Ed Alois, its Chief Financial Officer, Jim Hart, and Martin Strasmore on January 28, 2008.

8.

During the meeting, Plaintiff was accused of theft and fraud in connection with expense submissions.

9.

Mr. Kush denied the allegations of theft and fraud. Mr. Kush admitted that while the expenses were legitimate business expenses, he had unintentionally made errors in submitting them more than once to Defendant for reimbursement.

10.

Mr. Kush pointed out that he maintained a reasonable procedure for keeping track of expenses, but by accident had submitted them more than once.

11.

The expenses were reviewed by the Chief Financial Officer, Mr. Hart, before being paid by the Defendant.

12.

Mr. Kush's expense reports, including those with the mistaken expense reimbursement requests, were sent to the Chief Financial Officer, Mr. Hart, before being paid by the Defendant.

13.

At the meeting, Mr. Kush offered to write a check to repay the Defendant the total amount of the overage.

14.

The Defendant's President refused the offer of repayment.

15.

The Company had maintained a policy that accidents and human error could happen regarding expense reports that would not result in a termination.

16.

Other employees of Defendant have mistakenly or otherwise submitted expenses for reimbursement, but when the Company addressed the issue, no termination occurred.

17.

The Plaintiff's employment agreement with the Defendant contains a term of employment that does not expire until December 31, 2009.

18.

Rather than accept the offer of reimbursement, the Defendant instead chose to use the expense issue as an alleged basis to terminate the employment agreement for cause.

19.

Defendant specifically cited Section 7(a)(iii) of the employment agreement, which provides termination for cause upon "the commission by Executive of any crime or intentional act of fraud against the Company. . . ."

20.

During the meeting on January 28, 2008, Mr. Kush denied that he had committed any crime or had engaged in any intentional act of fraud against the Company.

21.

At the meeting, Mr. Alois, Defendant's President, stated to Mr. Kush that he would receive his earned bonus for 2007 amounting to approximately $75,000.

22.

The 2007 bonus is fully earned and payable no later than March 15, 2008.

23.

Mr. Alois also told Mr. Kush that Defendant would not make any disparaging remarks about him.

24.

Mr. Alois told Mr. Kush that he was terminated for cause based on the expenses discussed at the meeting and that he would receive his salary and benefits through January 28, 2008.

25.

Mr. Alois told Mr. Kush that the Defendant would not bring any lawsuit, action or claims against him in connection with his employment with the Company.

26.

Mr. Kush and Mr. Alois agreed that neither Plaintiff nor Defendant would pursue any claims or lawsuits against the other and would resolve the matter by payment of the $75,000 bonus and mutually releasing any potential claims that either may have against the other regarding their employment relationship.

27.

As of January 29, 2008, the Defendant had received Plaintiff's notebook and desktop computers that had been used for work purposes and had full control over and access to their contents, data, and documents.

28.

Approximately 11 days after the meeting on January 28, 2008, on or about February 5, 2008, the Defendant sent Mr. Kush a Separation Agreement and Release signed by its President, Mr. Alois.

29.

A true and accurate copy of the Separation Agreement and Release is attached and incorporated into these pleadings by this reference.

30.

The Separation Agreement and Release states in part what was agreed upon by the parties at the meeting on January 28, 2008.

31.

The Separation Agreement and Release in part 2(d) states that the Defendant agrees "[n]ot to bring any action against Employee for any action committed by Employee up to the date of Employee's execution of this Agreement."

32.

Defendant's President, Mr. Alois, signed the Separation Agreement and Release as of January 5, 2008.

33.

Mr. Kush signed the Separation Agreement and Release as of February 7, 2008.

34.

The language of the Separation Agreement and Release provided Defendant no written right to revoke the Agreement.

35.

Only Mr. Kush was provided a right to revoke the Agreement for a period of seven days following the date on which he signed the Agreement.

36.

Defendant offered the Separation Agreement and Release to Plaintiff as of February 5, 2008.

37.

Plaintiff accepted the Separation Agreement and Release as of February 7, 2008.

38.

Defendant drafted the Separation Agreement and Release.

39.

After Plaintiff had accepted the Separation Agreement and Release on February 7, 2008, and Defendant had signed the Agreement on February 5, 2008, Defendant sent by federal express a letter, dated February 7, 2008, to Plaintiff stating, "This is to advise you that Multilayer Worldwide Enterprises LLC has withdrawn its offer to you set forth in the draft Separation Agreement provided to you on February 5, 2008, pending the Company's completion of a review of your files."

40.

Plaintiff did not receive the letter purporting to withdraw the Defendant's offer until February 8, 2008, after Plaintiff had already accepted the Settlement Agreement and Release on February 7, 2008.

41.

The letter purporting to withdraw the Separation Agreement and Release was ineffective since the Agreement had already been accepted by Plaintiff before delivery of the Defendant's letter.

42.

The letter purporting to withdraw the Separation Agreement and Release was ineffective since the Agreement had been fully executed by the parties as of February 7, 2008.

43.

The letter purporting to withdraw the settlement reached by the parties was ineffective since the parties had verbally agreed upon a settlement at the meeting on January 28, 2008.

## COUNT I

44.

Plaintiff Daniel Kush realleges paragraphs 1 through 43.

45.

Based on the information communicated to Plaintiff by Defendant at the meeting on January 28, 2008, the Defendant wrongfully terminated the Employment Agreement with Plaintiff.

46.

Plaintiff did not breach the Employment Agreement with Cause according to the information Defendant submitted as the sole reasons for the termination on January 28, 2008.

47.

The Employment Agreement (attached to Defendant MWE's Complaint) at part 7(b) provides for severance to be paid to Mr. Kush for a termination without cause.

48.

According to the Employment Agreement, Plaintiff is entitled to severance equal to "the greater of (x) two years Base Salary or (y) Base Salary payable through the end of the then current Term."

49.

According to the Employment Agreement, Plaintiff's Base Salary for 2008 would have equaled $173,644 and for 2009 would have equaled $182,236.

50.

Defendant is indebted to Plaintiff under the terms of the Employment Agreement in the amount of $355,880 for severance pay.

## COUNT II

51.

Plaintiff Daniel Kush realleges paragraphs 1 through 43.

52.

Plaintiff has earned a nondiscretionary bonus of at least $75,000 for work already performed in 2007 under the terms of the Employment Agreement with Defendant.

53.

Defendant has failed and refused to comply with the payment of the nondiscretionary 2007 bonus to Plaintiff.

54.

Defendant has breached the Employment Agreement in failing to pay Plaintiff the 2007 nondiscretionary bonus.

55.

Defendant is indebted to Plaintiff in the amount of at least $75,000 for payment of the 2007 nondiscretionary bonus.

## COUNT III

56.

Plaintiff Daniel Kush realleges paragraphs 1 through 43.

57.

The parties entered into a binding, verbal settlement agreement on January 28, 2008.

58.

Defendant MWE promised not to bring any lawsuit against Plaintiff Kush in connection with his employment with Defendant for any actions or infractions committed allegedly by Plaintiff through the date of the settlement.

59.

Defendant promised to pay to Plaintiff $75,000 in connection with the settlement.

60.

Plaintiff promised not make any claims against Defendant in connection with his employment.

61.

Plaintiff and Defendant agreed upon the terms of the settlement.

62.

Defendant MWE has failed and refused to follow through with the verbal settlement agreement reached by the parties.

63.

Defendant has breached the verbal settlement agreement reached by the parties.

64.

Plaintiff has complied with all terms and conditions of the verbal settlement agreement.

65.

Plaintiff is entitled to specific performance of the verbal settlement agreement, including the dismissal of Defendant MWE's lawsuit against Plaintiff Kush and the payment by Defendant MWE of $75,000 to Plaintiff Kush by no later than March 15, 2008.

## COUNT IV

66.

Plaintiff Daniel Kush realleges paragraphs 1 through 43.

67.

The parties entered into a binding, written Separation Agreement and Release on February 7, 2008.

68.

According to the Separation Agreement and Release, Defendant MWE promised not to bring any action against Plaintiff Kush for "any action committed" by Plaintiff "up to the date of Employee's execution of this Agreement," February 7, 2008.

69.

Defendant promised to pay to Plaintiff Kush "Employee's bonus for the 2007 calendar year . . . less lawful deductions," amounting to at least $75,000.

70.

Plaintiff and Defendant agreed upon the terms of the settlement.

71.

Defendant has failed and refused to follow through with the written settlement agreement reached by the parties.

72.

Defendant MWE has breached the written settlement agreement reached by the parties.

73.

Plaintiff has complied with all terms and conditions of the written settlement agreement.

74.

Plaintiff Kush is entitled to specific performance of the written settlement agreement, including the dismissal of Defendant MWE's current lawsuit against Plaintiff and the payment by Defendant MWE of at least $75,000 to Plaintiff by no later than March 15, 2008.

## **COUNT V**

75.

Plaintiff Daniel Kush realleges paragraphs 1 through 43.

76.

Defendant MWE waived any claims against Plaintiff Kush both verbally, in writing, and by its representations and conduct during the course of events from January 28, 2008 through and including February 7, 2008.

77.

During the period from January 28, 2008 through February 7, 2008, Defendant had access to and control over all computers, documents and data used by Plaintiff Kush for business purposes.

78.

Defendant MWE had sufficient time to perform whatever review of information regarding Plaintiff Kush before sending the writing settlement agreement on February 5, 2008.

79.

Defendant MWE executed the release in favor of Plaintiff Kush with knowledge and opportunity to ascertain any and all potential claims involving Plaintiff Kush before tendering the release to Plaintiff Kush.

## **COUNT VI**

80.

Plaintiff Daniel Kush realleges paragraphs 1 through 43.

81.

Defendant MWE permitted employees to expense items without threat of being terminated for cause.

82.

Defendant ratified and acquiesced in the expenses submitted by employees, including Plaintiff Kush, in reviewing and then paying the expenses.

83.

Defendant was aware that errors and accidents regarding expenses could and did occur and permitted them to happen without terminating employees for cause.

84.

Defendant was aware that employees would engage in private matters during business endeavors and expense portions of those items, submitting same for reimbursement by Defendant, which Defendant would review and then pay.

85.

Defendant violated its own policies and procedures in terminating Mr. Kush for cause relative to the reasons communicated by Defendant at the meeting on January 28, 2008.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Daniel Kush respectfully prays the Court for relief, as follows:

a.    That a judgment be entered against Defendant Multilayer Worldwide Enterprises, Inc., in at least the amount of $430,880;

b.    That Plaintiff Daniel Kush receives pre-judgment interest at the legal rate from the date of filing this Counterclaim until the date of judgment;

c.    That Plaintiff Daniel Kush receives post-judgment interest at the legal rate;

d.    That Plaintiff Daniel Kush receives reasonable attorney fees from Defendant Multilayer Worldwide Enterprises, Inc.;

e.    That Defendant Multilayer Worldwide Enterprises, Inc.'s lawsuit against Plaintiff Daniel Kush be dismissed with prejudice, with costs taxed against Defendant Multilayer Worldwide Enterprises, Inc.; and

f.    For a jury trial on all issues so triable.

Respectfully submitted, this 2nd day of April 2008.

ANDREW B. KOPLAN[1]
Georgia Bar No. 428152

ANDREW B. KOPLAN, P.C.
5855 Sandy Springs Circle
Suite 150
Atlanta, GA 30328
Telephone: (404) 255-1600
Facsimile: (404) 255-7373
akoplan@yahoo.com
Counsel for Daniel Kush

---

[1] Motion for Admission *Pro Hac Vice* in process.

## SEPARATION AGREEMENT AND RELEASE

MULTILAYER WORLDWIDE ENTERPRISES, LLC ("**Company**") and DANIEL KUSH ("**Employee**") agree to enter into this SEPARATION AGREEMENT AND RELEASE dated as of February _5_, 2008 as follows:

1.    **Last Day of Employment.** Subject to the terms and conditions set forth in this Separation Agreement and Release ("**Agreement**"), Employee agrees that Employee's last day of employment with the Company is January 28, 2008 (the "**Termination Date**").

2.    **Consideration.** In consideration for the execution by Employee of this Agreement and Employee's fulfillment of the promises contained herein the Company agrees:

   (a)    To pay Employee Employee's base salary through January 28, 2008, which amount shall be paid in the next regular payroll of the Company;

   (b)    To pay Employee Employee's bonus for the 2007 calendar year ("Bonus"), which Bonus will be calculated in accordance with Employee's Employment Agreement dated December 14, 2005 (the "Employment Agreement"), and shall be payable as and when set forth in the Employment Agreement, less lawful deductions, such payment subject to the expiration of seven (7) days after receipt by the Company of this Agreement executed by Employee;

   (c)    Employee shall continue to be covered by the Company's medical insurance plan and other insurance benefits until January 28, 2008, at which time Employee may elect medical coverage under COBRA at Employee's own expense; and

   (d)    Not to bring any action against Employee for any action committed by Employee up to the date of Employee's execution of this Agreement.

3.    **No Other Severance Benefits or Consideration.** Employee understands and agrees that Employee would not be entitled to any severance benefits or other payments under any agreement, plan, program or arrangement maintained by Company, or set forth in this Agreement, or consideration of any other kind except for Employee's execution of this Agreement and the fulfillment of the promises set forth herein.

4.    **General Release of Claim.** By entering into this Agreement, Employee and Employee's heirs, executors, administrators, successors and assigns (collectively "**Employee**"), hereby knowingly, voluntarily and completely releases and forever discharges the Company and any and all of the Company's subsidiaries, parents, branches, divisions, affiliates, related entities, predecessor entities, present and former officers, directors, employees, fiduciaries and agents (collectively the "**Released Parties**"), individually and in their official capacities, of and from all causes of action, claims, damages, judgments or agreements of any kind, known or unknown, including, but not

limited to, all matters arising out of Employee's employment or business dealings with any of the Released Parties and the cessation thereof, including, but not limited to, any alleged violation of:

- The National Labor Relations Act;
- Title VII of the Civil Rights Act of 1964;
- The Civil Rights Act of 1991, as amended;
- Sections 1981 through 1988 of Title 42 of the United States Code;
- The Employee Retirement Income Security Act of 1974 ("**ERISA**");
- The Age Discrimination in Employment Act of 1967;
- The Immigration Reform Control Act;
- The Americans with Disabilities Act of 1990;
- The Federal Rehabilitation Act of 1973, as amended;
- The Older Worker Benefit Protection Act, as amended;
- The Fair Labor Standards Act;
- The Occupational Safety and Health Act;
- The Family and Medical Leave Act of 1993;
- The Equal Pay Act, as amended;
- Massachusetts Wage and Hour Laws, G.L. cs. 149 and 151;
- The Massachusetts Law Against Discrimination, G.L. c. 151B;
- The Massachusetts Equal Rights Law, G.L. c. 93;
- The Massachusetts Civil Rights Act, G.L. c. 12, " 11H and 11I;
- The Massachusetts Privacy Statute, G.L. c. 214, ' 1B, as amended;
- The Massachusetts Sexual Harassment Statute, G.L. c. 214 ' 1C;
- any other federal, state or local civil or human rights, tort or defamation laws, or any other local, state or federal law, regulation or ordinance;
- any public policy, contract, tort, or common law; or
- any allegation for costs, fees, or other expenses including attorneys' fees incurred in these matters.

5.  **No Claims Exist.**  Employee confirms that no claim, charge, complaint, or action instituted by Employee exists in any forum or form against Company.  Employee will not in the future file any claim, charge, complaint or action against Company before any federal, state or local court or agency.  In the event that any such claim, charge, complaint or action is filed by another entity or person(s) against the Company, (i) Employee shall not be entitled to recover any relief or recovery therefrom including costs and attorney's fees, and (ii) Employee shall pay all costs and expenses of defending such action incurred by the Company including reasonable attorneys' fees.

Employee affirms Employee has no known workplace injuries or occupational disease and has been provided and/or has not been denied any leave requested under the Family Medical Leave Act.

6.  **No Participation In Claims.**  Employee understands that if this Agreement were not signed, Employee would have the right to voluntarily assist other individuals or entities in bringing claims against Company.  Employee hereby waives that right and Employee will not provide any such

assistance other than assistance in an investigation or proceeding conducted by an agency of the United States government.

7.    **No Future Application for Employment.**  Employee acknowledges that because of circumstances unique to Employee, including, but not limited to irreconcilable differences with the Company, Employee is not qualified to hold any position with the Company now or in the future and Employee shall not apply in the future for employment with Company.

8.    **Return of Property.**  Contemporaneously with the delivery of this executed Separation Agreement, Employee shall return to the Company all documents and materials that relate to the Company, and any property of the Company in Employee's possession or control.

9.    **Nonadmission of Wrongdoing.**  The parties understand and agree that neither the making of this Agreement nor anything contained herein shall in any way be construed or considered as an admission on the part of the Company regarding any liability, wrongdoing, or unlawful conduct of any kind.

10.    **Confidentiality, Restrictive Covenant and Employment Agreement.**  Employee acknowledges and agrees that except as specifically set forth herein, Employee's employment agreement with the Company dated December 14, 2005 (the "**Employment Agreement**") and all of Employee's rights thereunder is terminated as of the Termination Date; provided however, the Employee acknowledges and agrees that Employee will continue to be bound by Section (8), (Restrictive Covenant) and Section 11 (Scope of Restriction) of the Employment Agreement, and that Employee's acknowledgment and compliance with the obligations therein is the basis of the Company's agreement hereunder.

11.    **Non-Disclosure.**  Employee agrees that Employee will not disclose the terms of this Agreement to any third party other than Employee's immediate family, attorney, accountants, or other consultants or advisors, except as may be required by any governmental authority; provided that any such persons agree that they will be bound by the non-disclosure requirements of this provision and that any breach by a third party will be considered to be a breach by Employee.

12.    **Governing Law.**  This Agreement shall be governed by and construed in accordance with the laws of the State of Massachusetts applicable to agreements made and to be performed in that State, without regard to its conflict of laws provisions.  If any provision of the Agreement is deemed legally or factually invalid or unenforceable to any extent or in any application, then the remainder of the provision and the Agreement, except to such extent or in such application, shall not be affected, and each and every provision of the Agreement shall be valid and enforceable to the fullest extent and in the broadest application permitted by law.

13.    **Entire Agreement.**  Except as to the provision of the Employment Agreement which survive hereunder, this Agreement shall supersede any and all existing oral or written agreements between Employee and Company and any representations, or warranties of Company or its present or former affiliates or subsidiaries.  Employee acknowledges that Employee has not relied on any

representations, promises, or agreements of any kind made to Employee in connection with Employee's decision to sign this Agreement, except for those set forth in this Agreement.

14.     **Right to Revoke.** Employee understands Employee has twenty-one (21) days to consider this Agreement and should consult with an attorney prior to signing this Agreement.

*In addition*, Employee has the right to revoke this Agreement at any time during the seven (7) day period following the date on which Employee first signs the Agreement. If Employee wants to revoke, Employee must make a revocation in writing which states: "I hereby revoke my acceptance of the Separation Agreement and General Release". This written revocation must be delivered by hand or sent by certified mail with a postmark dated before the end of the seven-day revocation period to *Edward Alois, MULTILAYER WORLDWIDE ENTERPRISES LLC, 37 East Street, Winchester, Massachusetts 01890* otherwise the revocation will not be effective.

15.     **Effective Date.** This Agreement shall not become effective or enforceable until the expiration of the 7-day revocation period described in Section 14 above.

16.     **Non-Disparagement.** Employee agrees that Employee will not, without the prior written consent of the Company, make or cause to be made any oral or written statements to any person, firm, corporation or governmental or other entity which reflect negatively on the Company or any of its direct or indirect parents, subsidiaries, affiliates, related companies, successors and assigns, or on its and their directors, officers, members and employees, or which could reasonably be understood to be detrimental to the business interests of the Company or any of its direct and indirect parents, subsidiaries, affiliates, related companies, successors and assigns, or to its and their directors, officers, member and employees, provided that nothing herein shall restrict Employee from making any statement in response to inquiry from any governmental entity, pursuant to subpoena, or as may otherwise be required by law, provided Employee immediately gives notice to the Company of such inquiry and shall give the Company the opportunity to challenge such disclosure.

17.     **Miscellaneous.**

> (a)     **Amendment.** This Agreement may not be amended except by a written agreement signed by the parties.

> (b)     **Waiver.** The failure of a party to insist upon strict adherence to any term of this Agreement on any occasion shall not be considered a waiver thereof or deprive that party of the right thereafter to insist upon strict adherence to that term or any other term of this Agreement.

> (c)     **Headings.** Section headings are used herein for convenience of reference only and shall not affect the meaning of any provision of this Separation Agreement.

> (d)     **Counterparts.** This Agreement may be executed in any number of counterparts, each of which so executed shall be deemed to be an original, and such counterparts will together constitute but one Agreement.

EMPLOYEE UNDERSTANDS THAT EMPLOYEE'S RIGHT TO RECEIVE BENEFITS SET FORTH IN THIS SEPARATION AGREEMENT IS SUBJECT TO EMPLOYEE'S COMPLIANCE WITH THE TERMS AND CONDITIONS SET FORTH IN THIS SEPARATION AGREEMENT AND THAT EMPLOYEE WOULD NOT RECEIVE SUCH BENEFITS BUT FOR EMPLOYEE'S EXECUTION OF THIS SEPARATION AGREEMENT.

EMPLOYEE ALSO UNDERSTANDS THAT BY SIGNING THIS SEPARATION AGREEMENT, EMPLOYEE WILL BE WAIVING EMPLOYEE'S RIGHTS UNDER FEDERAL, STATE AND LOCAL LAW TO BRING ANY CLAIMS THAT EMPLOYEE HAS OR MIGHT HAVE AGAINST THE RELEASED PARTIES. *EMPLOYEE UNDERSTANDS THAT EMPLOYEE HAS 21 DAYS TO CONSIDER THIS SEPARATION AGREEMENT AND HAS BEEN ADVISED TO CONSULT WITH AN ATTORNEY PRIOR TO SIGNING THIS SEPARATION AGREEMENT.*

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement as of the day and year first above written.

**MULTILAYER WORLDWIDE ENTERPRISES, LLC**

By: _____

Name: Edward J Alois

Title: President

Date: 1-5-08

**EMPLOYEE**

_____

Name: Daniel Kush

Date: 7 Feb 2008